IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DANIELLE SIMMONS**                                                                                               **PLAINTIFF**

**V.**                              **CAUSE NUMBER: 1:25-cv-00114-JDM-RP**

**BANCORPSOUTH BANK, et al.**                                              **DEFENDANTS**

## ORDER AND MEMORANDUM OPINION

Plaintiff Danielle Simmons worked for Defendant Cadence Bank in various positions since 2021. Before starting her job, Simmons signed an offer letter. The offer letter contained an arbitration provision. In it, the parties agreed to resolve any dispute through binding arbitration.

Cadence transferred Simmons to a new position in early 2024. And she contends afterwards Cadence discriminated against her because she is black. So she filed a Complaint [1] against BancorpSouth Bank D.B.A. Cadence Bank alleging unlawful race discrimination.

Now, Cadence has filed a Motion to Compel Arbitration [8] asking the Court to enforce the arbitration provision in Simmons's offer letter. Simmons opposes the motion [14]. She claims she did not know her offer letter contained an arbitration agreement. But the offer letter does indeed contain an arbitration agreement. And in 2021, Simmons agreed to the letter and its terms. Because she is bound by the arbitration agreement, the Court grants Cadence Bank's Motion to Compel Arbitration [7].

### Factual and Procedural History

On June 28, 2021, BancorpSouth[1] sent Simmons a letter titled Offer of At Will

---

[1] After BancorpSouth hired Simmons, it changed its name based on a merger with Cadence.

Employment. [8-1] The offer remained open for two days until June 30, 2021. The letter included job information such as details about pay, benefits, and the bank's code of conduct. It also described the methods for resolving disputes between BancorpSouth and Simmons in the letter's Alternative Dispute Resolution (ADR) section.

The ADR section explains that all disputes arising under "this Agreement" shall be resolved first by good faith negotiations. [8-1] Should negotiations between the parties not resolve the dispute, the parties may pursue non-binding mediation. And "[i]f mediation fails to produce a settlement of any and all disputes, then the dispute shall be arbitrated in Lee County, Mississippi." [8-1] On the next page, the ADR section reiterates that, should negotiation and mediation fail, "any dispute between [the parties] . . . shall be submitted to binding arbitration[.]" [8-1] It then delegates "all decisions respecting the arbitrability of any dispute" to the arbitrator. [8-1]

BancorpSouth human resources officer Gayle Lander emailed the employment offer letter to Simmons on June 28, 2021. Lander asked Simmons to "[p]lease take [her] time and review [her] offer letter[.]" [14-2] Simmons claims bank president Ketria Ruff then called her the same day to briefly go over the offer letter. Ruff reviewed Simmons's pay rate, vacation days, and job location. [15] According to Simmons, Ruff also told Simmons that she should sign the letter soon to begin working as quickly as possible. [15] Simmons signed and returned the offer letter the same day Lander sent it to her.

After signing the offer, Simmons began work for Cadence Bank in Tupelo, Mississippi. She started as head teller, then transitioned to loan operations specialist. According to Simmons, after Cadence transferred her to the reconciliation department, she faced racial discrimination from coworkers and from her manager. Simmons reported the alleged discrimination to Cadence's human resources department. And after conflicts between Simmons and Cadence reached a head,

2

the bank terminated her in March 2024.

Simmons then filed a charge of discrimination with the Equal Employment Opportunity Commission [1-1] asserting unequal treatment and retaliation. After review, the EEOC determined it would not proceed with its investigation. [1-2] So Simmons sued Cadence for racial discrimination [1]. Cadence answered [5] and moved to compel arbitration [8] citing the terms of the employment offer letter.

## Discussion

This Court employs two analytical steps to determine whether to enforce an arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). First, the Court applies state contract law to decide if the parties entered into an agreement to arbitrate. *Matter of Willis*, 944 F.3d 577, 579 (5th Cir. 2019) (citing *Kubala*, 830 F.3d at 201)). Second, the Court determines if a particular claim is covered by the arbitration agreement. *Id.* But in situations like this one—where the arbitration agreement delegates the arbitrability of claims to the arbitrator—the Court only asks if the delegation clause is valid. *Id.*

### I. Simmons agreed to arbitrate her claims against Cadence.

Considering the first step—whether Simmons and Cadence agreed to arbitrate at all—Simmons asserts in an affidavit "the first time [she] heard about the arbitration clause in [her] employment [offer] was after [Cadence] filed a Motion to Compel Arbitration in this lawsuit." [14-1] So as she sees it, because she did not know about the arbitration provision, she could not agree to arbitrate.

While her challenge focuses on the mutual assent element of the arbitration provision,[2] in

---

[2] Under Mississippi law, "[t]he elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Gulf*

3

Mississippi, parties "have an inherent duty to read the terms of a contract prior to signing." *Hinds Cnty. Econ. Dev. Dist. v. W & G Props., LLC*, 203 So. 3d 49, 56 (Miss. Ct. App. 2012) (quoting *Brown v. Anderson*, 80 So. 3d 878, 881 (Miss. Ct. App. 2012)). And one cannot "neglect to become familiar with the terms and conditions and then later complain of lack of knowledge[.]" *Id.*

Simmons signed the offer of employment. And the offer letter makes clear that "[b]y signing below you acknowledge the terms described above and the following which you will acknowledge and be bound by[.]" [8-1] Following the acknowledgement, the ADR section explicitly states that "any dispute . . . shall be submitted to binding arbitration . . . and shall not be resolved by or in a court of law." [8-1] Simmons's signature appears on the offer's final page.

That Simmons signed the offer letter is important because in Mississippi, "a person is charged with knowing the contents of any document that he executes." *S. Healthcare Servs. v. Lloyd's of London*, 110 So. 3d 735, 746 (Miss. 2013) (quoting *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1056 (Miss. 2004)) (internal citations omitted). So by signing the letter, Simmons clearly acknowledged and agreed to the arbitration provision's terms. Her failure to read or ask questions about the offer letter before signing it does not negate her assent to its terms—including the arbitration provision.

Because it is obvious the parties agreed disputes would be arbitrated, Simmons is bound by the arbitration agreement.

**II.   The arbitrator must decide arbitrability issues.**

Having found an arbitration agreement exists between Simmons and Cadence, the Court's typical second step is to determine if the arbitration agreement covers Simmons's particular claims.

---

*Coast Hospice LLC v. LHC Group Inc.*, 273 So. 3d 721, 734 (Miss. 2019) (quoting *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013)). The contract elements Simmons does not challenge are all present in the arbitration provision.

4

But this specific arbitration agreement delegates the arbitrability of the dispute to the arbitrator. So the Court only asks if the delegation clause is valid. *Matter of Willis*, 944 F.3d at 579.

To decide a delegation clause's validity, the Court asks if the delegation clause "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* This approach reflects the federal policy in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d. 76 (1995).

Simmons's arbitration provision says "[a]ll decisions respecting the arbitrability of any dispute shall be decided by the arbitrator." [8-1] This clause is substantively similar to delegation clauses in *Kubala* and *Rent-A-Center*. And in both cases, the Fifth Circuit and Supreme Court respectively found the delegation clauses valid and enforceable. The language used in those two purported delegation clauses left challenges to the agreements to be decided in arbitration. *Kubala*, 830 F.3d at 204; *Rent-A-Ctr.*, 561 U.S. at 66.

Here, the delegation clause is valid because it shows the parties intended an arbitrator—not a court—decide the arbitrability of "any dispute." And because the arbitration agreement delegates arbitrability issues to an arbitrator, the Court need not decide which of Simmons's claims are subject to arbitration. Thus, the Court finds that Cadence's Motion to Compel Arbitration [8] should be granted.

Even so, Simmons wants the Court to decide whether the arbitration provision is procedurally unconscionable. But in Mississippi, questions about an agreement's conscionability go to the enforcement of the agreement, not to its formation. *Bowles v. OneMain Financial Grp.,*

5

*L.L.C.*, 954 F.3d 722, 727 (5th Cir. 2020) (citing *Caplin Enters. Inc. v. Arrington*, 145 So. 3d 608, 613 (Miss. 2014)). And even though the Court is skeptical of Simmons's unconscionability argument, the Court faces a valid delegation clause. And that clause sends enforcement challenges to an arbitrator. Therefore, the Court refers Simmons's unconscionability challenge to the arbitrator. *See id.* at 728.

## Conclusion

For these reasons, Cadence Bank's Motion to Compel Arbitration [8] is **GRANTED**. All of Simmons's claims shall be submitted to arbitration under the terms set forth in the arbitration provision of her Offer of At Will Employment letter. The parties shall also notify the Court about the outcome of the arbitration within 10 days thereafter.

This case is **STAYED** until further order of the Court.

**SO ORDERED**, this the 24th day of February, 2026.

/s/ James D. Maxwell II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI